UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ISMAEL V.,[1]

      Petitioner,

    v.

WARDEN OF THE MESA VERDE
DETENTION CENTER, et al.,

      Respondents.

No. 1:26-cv-02317-TLN-DMC

A# 244-840-297

**ORDER**

This matter is before the Court on Petitioner Ismael V.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.)  Respondents filed a return.  (ECF No. 8.) Petitioner replied.  (ECF No. 12.)  For the reasons set forth below, the Petition is GRANTED.[2]

///

///

---

[1]     The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]     The Court previously ordered Petitioner released.  (ECF No. 13.)  The Court now sets out its reasoning for granting the Petition.

1

## I. FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to the constitutionality of his civil immigration detention. Petitioner came to the United States to seek asylum. (ECF Nos. 1 at 4; 8-2 at 2.) On December 10, 2024, Petitioner entered the United States with a scheduled CBP One appointment. (ECF No. 8-2 at 2.) Petitioner was processed by immigration authorities, issued a Notice to Appear for immigration court, and paroled into the United States. (*Id.*; ECF No. 8-3.) Petitioner asserts he is "a hardworking and honest person who has always tried to live responsibly and contribute positively to the community. . . and always tried to comply with the law." (ECF No. 1 at 5.) He further asserts he is not a danger to the community. (*Id.*) Indeed, Respondents do not claim that Petitioner is a danger, flight risk, or has any criminal history. (*See* ECF No. 8.)

Nevertheless, on January 6, 2026, immigration officers detained Petitioner. (ECF Nos. 1 at 4, 5; 8 at 2.) Petitioner was stopped on his commute to work and arrested; he asserts he was not engaging in any criminal activity. (*Id.*)

Thereafter, Petitioner was detained nearly four months — from January 6, 2026 to April 30, 2026 — without a hearing as to the justification of his detention. (*See* ECF Nos. 1 at 4; 14 at 1.) While in custody, Petitioner challenged the lawfulness of his civil detention without a hearing. (ECF No. 1.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v.*

*Davis*, 533 U.S. 678, 687 (2001).

**III.   ANALYSIS**

Petitioner claims his detention without a hearing violates the Fifth Amendment Due Process Clause.[3]  (ECF No. 1 at 8.)  Respondents claim Petitioner has no right to any hearing because Respondents have determined he is subject to mandatory detention.  (*See generally* ECF No. 8.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i.   Liberty Interest*

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"  *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025)

---

[3]     Petitioner also asserts his detention violates the Eighth Amendment (ECF No. 1 at 12–13), however, finding relief warranted under his Fifth Amendment claim, the Court declines to assess the second claim in favor of judicial economy.

3

(noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause.  The government paroled Petitioner into the United States, where he built a life, established ties to his community and a support network, and obtained employment. (ECF No. 1 at 5.)  Even if he is subject to removal or his freedom can be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause.  *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

In opposition, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), which renders him without a liberty interest or any right to a hearing.  (*See generally* ECF No. 8.)  As Respondents well-know, the vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who reside in the United States after they were released by the government.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  By comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice."  *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

As this Court has said numerous times, it will not reconsider its position on this issue absent distinguishing facts or new authority.  Therefore, consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory

detention under § 1225(b)(2).  Rather, Petitioner's detention is governed by 8 U.S.C. § 1226(a) (standard removal proceedings) and he is statutorily entitled to the process required by that provision, including a bond hearing, at minimum.

As to his constitutional claim, Petitioner maintains his liberty interest protected by due process.  The Court next turns to the procedural safeguards that were owed to Petitioner.

### ii.  Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him.  Despite his interest in maintaining his liberty, Petitioner was detained for nearly four months without any opportunity to be heard as to the justification of his detention, unable to work, and separated from his community and support system.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is significant given Petitioner did not receive any process, either pre- or post-detention.  Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process.  *Zadvydas*, 533 U.S. at 690.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994.  Here, Petitioner is not subject to a removal order.  Additionally, Respondents do not contend that Petitioner is a danger to the community or a

flight risk.  (*See* ECF No. 8.)  Indeed, in December 2024, immigration authorities would have found Petitioner not to be a danger or flight risk in order to parole him into the country.  *See* 8 C.F.R. § 212.5(b).  Respondents point to no changing circumstances to undermine that determination, while Petitioner contends he has complied with the law during his time in the United States.  Therefore, the risk that he was detained without proper justification is high.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest in detaining Petitioner without a hearing is negligible, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards.  Notice and custody determination hearings are routine processes for Respondents and are indeed the very processes required under § 1226(a) (or to terminate humanitarian parole under 8 C.F.R. § 212.5(e)).  Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal.  Any burden associated with the provision of these processes does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation.

The Court finds due process required Respondents to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide."  *Id.* at 129.  Respondents have not identified any reason Petitioner should be a "special case," nor do they supply an individualized justification for Petitioner's detention.  (*See generally* ECF No. 8.)

Petitioner was not provided with any notice, neither was he provided a pre- or post-deprivation hearing.  Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

///

**IV.    CONCLUSION**

Respondents' detention of Petitioner violated the Fifth Amendment.  Accordingly, IT IS HEREBY ORDERED:

1.  The Petitition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2.  To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

3.  The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 11, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE